GULOTTA, Judge.
In this products liability case, the issue is whether plaintiff’s misuse is a bar to her recovery for injuries sustained when the top or lid of a pressure cooker exploded. Plaintiff, appealing from the dismissal of her suit, claims the trial judge erred in concluding that the pressure cooker was not defective, that it was not in “normal use” at the time of the explosion, and that defendant did not have a duty to warn of the danger of risk of injury.
The rule of strict liability for manufacturers in a products liability ease was set forth by the Louisiana Supreme Court in Weber v. Fidelity & Casualty Insurance Co. of N. Y., 259 La. 599, 250 So.2d 754 (1971) and followed and quoted with approval by the Supreme Court in Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980). That rule is as follows:
“A manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving that the product was defective, i.e., unreasonably dangerous to normal use, and that the plaintiff’s injuries were caused by reason of the defect.
******
If the product is proven defective by reason of its hazard to normal use, the plaintiff need not prove any particular negligence by the maker in its manufacture or processing; for the manufacturer is presumed to know of the vices in the things he makes, whether or not he has actual knowledge of them.”
The Hunt court pointed out further that in order to escape liability in these cases one must show that the damage was due to the fault of the victim, fault of a third party, or an act of God.
The question then is whether or not the explosion and resulting injury was caused from a defect in the pressure cooker or was caused from plaintiff’s misuse. After finding no defect in the design or manufacture of the pressure cooker, the lid or the plug, the trial judge concluded the accident resulted from “misuse”.
The trial judge properly concluded that the explosion had resulted from a failure of release of the rubber pressure plug. In connection with his conclusion that the product was not in “normal use” at the time of the explosion, the judge pointed out that the product had been manufactured in 1948 *146 and had been used by plaintiff approximately three times a week for the past twelve years. He found further that plaintiff had never read the instruction booklet, had not checked the vent pipe prior to cooking, and had not used any type of brush to clean the vent. He also noted that plaintiff had been aware that the cooker was not performing normally prior to the accident, and had put the indicator weight in place although the steam was not “coming out as fast as usual”.
The testimony of Linda Nevle generally supports the conclusions reached by the trial judge; however, she did state that she had used the cooker without incident for a period of approximately twelve years. She stated further that the cooker was a gift from her husband’s aunt and that she did not receive a manual or instruction book. Although plaintiff admitted that she had not read the manual for this cooker, she had read the service manual for a similar cooker owned by her.
The difficulty in this case arises in determining how plaintiff misused the cooker. Presto apparently claims that because plaintiff failed to clean the vent steam was restricted from escaping thereby causing a pressure or heat build up in the cooker resulting in hardening of the pressure plug. Presto claims further that plaintiff was aware that steam was not escaping normally through the vent immediately prior to the accident.[1]
Raymond Masopust, the Vice President and General Manager of Presto, manufacturer of the pressure cooker, stated that he had examined the safety plug and had never seen a plug so deteriorated in so short a time. According to Masopust, testing of two cookers and safety plugs similar to plaintiff’s by subjecting them to twenty times more use than plaintiff over a four-month period did not result in loss of pliability. Masopust stated that the tested plugs were “pliable and would still function as designed.” Nevertheless, although Ma-sopust further testified that this particular cooker was manufactured in February, 1948, and that Presto had stopped making plugs like the one on the pot in this accident in 1957, plaintiff stated that the replacement plug used four months prior to the accident came in a package labelled “Presto”. Although Masopust stated that excessive pressure deteriorates the plug and that excessive pressure builds in the cooker when particles of food are left in the vent pipe, noticeably absent from his testimony is the explanation in the instruction manual that the plug would automatically release when the vent pipe becomes clogged.
Defendant’s theory of misuse by plaintiff was negated by the testimony of Lawrence Frances Wilson, a civil engineer who testified that the vent pipe area was not the area that failed to function and cause the pot to explode. According to Wilson, the safety plug was the problem and even if the vent-pipe were “taped shut” the safety plug would “react”. The instructions in defendant’s manual supports Wilson’s observations. The manual states:
“OVER-PRESSURE PLUG — The overpressure plug in the cover of your cooker is an added safety device. This plug will automatically release excess steam in case the vent pipe becomes clogged so that the pressure does not release normally.”[2]
Considering this evidence, we are led to conclude that there exists an insufficien *147 cy of evidence to establish that the failure of the release of the over-pressure plug resulted from plaintiff’s misuse. Accordingly, we reverse the judgment of the trial court.
QUANTUM
Plaintiff was temporarily blinded by the explosion and sustained burns on her face, neck and chest. According to her testimony, she was unable to see during her hospitalization and her eyes remained bandaged for approximately three or four months to heal, and she continued to have “blotched scars” on her face and neck. Her eyes were sensitive to sun and light.
According to the stipulated medical reports, plaintiff was seen in the emergency room at Southern Baptist Hospital on May 5, 1976, the day of the accident, and remained hospitalized until May 10, 1976. Plaintiff (thirty years of age at the time of the accident) was seen by Dr. Thomas C. Naugle, Jr. on May 6, 1976 and on six occasions thereafter. According to his stipulated report, Mrs. Nevle sustained “first degree burns of the face and neck with chemical burns of the eye which were quite extensive”. He stated that she responded well to treatment and was asymptomatic on September 7, 1977. He indicated that her prognosis was “quite good”, but that she might have intermittent dryness of the eyes. An October 25, 1977 report from Dr. Naugle added little if anything to his earlier report.
In a September 26, 1977 report, also stipulated, Dr. L. Terrell Tyler stated that he had seen plaintiff in consultation during her hospitalization and again as an outpatient on May 11, 1976. On the second visit, he found that the first degree “flash” burns of the face were clean and healing “nicely”.
Based on the medical and lay testimony, we consider an award for general damages in the amount of $7,000.00 to be proper. In connection with the special damages, medical expenses were stipulated in the sum of $658.35 and repairs to property in the sum of $483.89, for a total of $1,142.24.
DECREE
Consistent with the foregoing, the judgment of the trial court is reversed, rescinded and set aside.
IT IS NOW ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Linda Nevle, wife of Michael A. Nevle and against National Presto Industries, Inc. in the sum of $7,000.00, together with judicial interest from date of demand until paid. It is further ordered, adjudged and decreed that there be judgment in favor of Michael A. Nevle and against National Presto Industries, Inc. in the sum of $1,142.24, together with judicial interest from date of demand until paid. Costs to be paid by National Presto Industries, Inc.
REVERSED AND RENDERED.

. Defendant also claims that plaintiff violated the instructions by cooking butterbeans without prior soaking thereby causing a pressure buildup. However, this neglect, if it is indeed neglect, was not the cause of the explosion. The cause was the failure of the release of the pressure-plug when the pressure inside the cooker exceeded the normal limits.

. Defendant complains that plaintiffs failure also was in neglecting to read the manual of instructions accompanying the pressure cooker when purchased. We find no merit to this claim. Nowhere in the instructions do we find the warning that intense heat, abnormal pressure, or a clogged vent would result in crystali-zation or hardening of the over-pressure plug. Accordingly, whether plaintiff read or failed to read the manual was not a cause in fact of this explosion.